

Case # 4:26-cv-643

I.JURISDICTION AND VENUE

This action is brought under FEDERAL TORT CLAIM ACT FTCA,28 U.S.C. § 1346(b) and §2671 et seq

. The Plaintiff has fully exhausted all administrative efforts to rectifiy the situation including submitting SF95 which was officially denied on February 24, 2026 and she is filing this within the mandatory 6 month window.

. The Plaintiff currently resides within the district, and the harm occurred while residing in the district.

II. The Parties

Plaintiff: Leah Joy Thompson, Required EFMP Enrollment Civilian Military Dependent

Defendant: United States of America, liable for the tortious acts and omissions of employees of the Department of the Navy and SOCOM/WARCOM within the scope of their employment.

**III. Factual allegations:**

**Longstanding systemic pattern of deliberate indifference** .

Defendants command possesses a documented multi-decade history and pattern of systemic concealment, deliberate indifference and institutional coverup

Plaintiff was previously married to a separate service member assigned to this exact same command during which time she was subjected to severe physical violence and sexual assault. (Married to previous service member for 15 years)

Defendants command possessed direct actual knowledge of this prior abuse including being provided with a copy of an audio recording wherein prior service member admitted to the rape and a (domestic violence restraining order) DVRO was active and in place during that time. Additionally the mediation in court during that time said that the prior service member was a danger and threat to the plaintiff and only supervised visitation by a therapist or court appointed person would be allowed with the children.  The mediation from the previous marriage stated that he needed psychological evaluation and help. The command was given copies of this by the court, the plaintiff and by the previous spouse and the defendants command still ignored the pleas of the plaintiff even after the previous spouse was gloating at the command that he had hid in her closet in her home waited until she slept and held a knife and gun to her while he stood over her when she woke up. Her son witnessed and remembered

Case 4:26-cv-00643-FJG    Document 1    Filed 07/24/26    Page 1 of 21

the horrific event. Her current spouse heard other service members repeat these atrocities as they were told to them by the former spouse and retold to the current spouse.

Even with eye witnesses who were willing to testify the command did nothing they refused a Military Protective Order and denied her the right to bring forth witnesses and evidence which allowed the FAP case against her first husband to be dismissed.

Despite this overwhelming irrefutable evidence, the Defendants Command actively refused to issue a Military Protective Order (mpo) instead they protected the abuser, even after he committed a residential burglary by breaking into the plaintiffs home on more than one occasion.

"This command's institutional culture of protecting abusers while abandoning civilian victims is a systemic practice, further evidenced by the command's history of actively covering up training deaths, operational negligence, and suicides to evade external oversite, civilian involvement, consequences and repercussion within the military and civilian sector.

Therefore, when the plaintiff repeatedly contacted the command from her hospital quarantined bed in 2024, and begging for medical and financial intervention throughout 2025 when she needed life saving surgery for colon resection due to rapid growth, multiple colonoscopies, bladder/kidney surgery, oralomaxilfacial surgery, ramicade infusion treatments that had a 12 day fatality possibility after the infusions, and now needs additional colonoscopy and surgical intervention due to further rapid growth, torn rotator cuff, additional bladder/kidney intervention.  Some of the surgery/surgical procedures and interventions that have taken place and are needed are the result of the years of repeated rape and sexual assault that the Defendant ignored. Additionally during that time in 2008 the plaintiff was raped to the point her ovary ruptured and needed surgical removal, 7 months later she needed a hysterectomy and suffered severe internal bleeding discovering 1 of 3 hemophilic bleeding conditions she has. The plaintiffs previous spouse was already at the command and the CMC at the time came to the hospital and interrogated the plaintiff in her hospital room because the prior spouse had missed so much work and they did not believe the gravity of the situation until they saw the massive bruising from the internal bleeding and her falling asleep due to hemoglobin at a 4 as they were preparing to transfuse her. They had already been made aware of the ruptured ovary and need for hysterectomy at 28. They assured her "he will get anger management". They did not do anything to protect her from further abuse, sexual assault and trauma that was later fallowed by years of stalking and ptsd.

The Defendant requires that Dependents who have educational or health issues are enrolled in exceptional family member program which entails going through a medical board, required hippa violations, and classifying them able to live over seas or not with their sponsor/service

member.  This also requires family care plan and child care will be withheld without this and terminated and the service member will be processed out of the military without this if their depended that is EFMP is a dependent spouse or adult dependent.

During 2024-2026 after her current spouse made rank (E-8) she  repeatedly asked for intervention for basic spousal rights such as updated military id card that is the only card dependents have for their medical, dental, and base access. She asked for a family care plan as mandated in the defendants mandatory policies, updated efmp to receive services and accommodations she was entitled to as a dependent efmp per their directives. She begged repeatedly for assistance due to the multiple procedures/surgeries needed. Patient needs/requirements were verified through American Red Cross and sent to the Command and to her husband, refusal to enforce their own mandatory policy that the defendant requires military families to participate in efmp, refusal to enforce defendants own policy regarding domestic abuse and reporting procedure and the self-obligation the defendants mandate within those policies to protect military dependent spouses and children. Incidents from 2024-2026 prior to the Plaintiff moving from California to Missouri and to present the command's refusal to act was not an isolated administrative oversight. It was a continuation of decades-long deliberate, and malicious policy of prioritizing the shielding of its personnel over its mandatory legal obligation to protect vulnerable civilian dependents.

The plaintiff was repeatedly denied request for an updated military id until May 2026, her military id is due to expire August 2026 and she needs colonoscopy and further medical intervention after the expiration of her military id. With the military the insurance and all privileges ends the date the military id expires due to threat level and policy for base access and allowing those who do or don't belong on base. There is no grace period the dependents are left with nothing or if anything is incorrect or outdated meaning sponsors promotion or demotion requires updated id renewal.

The plaintiff filed an SF95 to settle this matter, repeatedly sending emails and leaving voicemails that went unanswered to submit documentation and evidence.  The defendant sent her an account id. The email stated it was to check the status of the claim and for settlement information and to update/add information additional documents evidence etc. However it did not have her claim. Additionally it was with the claims for the Camp Lejune cases for PFAS/AFFF. In her claim she mentioned that the defendant does not care for their own servicemembers or abide by policy pertaining to them and their safety let alone the dependents of those servicemembers. She mentioned that she contacted the command per the defendants tbi instructions, mandatory protocols and regulations which is what she believes is the drastic and increasing decline, behavioral explanation, and increasing abusive behavior of her husband. This too the command refused to follow.   The defendant is a SWCC (Special Warfare Combatant

Craft Crewman) or special forces. Her husband has been in the Navy 21 years as of July 26th. She also informed the defendant that their mandatory sea/shore rotation is not only rate specific (job specific) but it clearly states that after 3 years at a sea billet (deployable timeframe) they are to rotate/transfer to a shore command however if there are manning issues they can extend those 3 years to 5 years at sea however they must go to a shore billet for 3 years after that. The plaintiffs husband has been in the Navy 21 years as of the 26th of July. The first year of service is spent at bootcamp schooling for their rate and any specialty job such as SEAL/SWCC/EOD/DIVER etc. The plaintiffs husband completed one shore billet from 2016-2019. He has spent 17 years on fast boats. Which the studies to include autopsies have concluded that it is 100% that any amount of time on the boats causes tbi and the longer duration especially continuous without recovery causes damage and harm to the prefrontal cortex of the brain to include, paranoia, risky behavior, addiction, narcissistic personality disorder, intermittent explosive mood where the reaction does not fit the situation, migraines, forgetfulness, panic attacks, as well as others these were his main symptoms. The plaintiff has contacted the command regarding these worsening symptoms since 2019 that they ignored. There have been multiple suicides at sbt12 caused by tbi, service related injuries that the plaintiffs husband was involved in as well as service related deaths that this command in one fashion or another have covered up. If they are able and willing to harm and coverup the injuries and deaths of their own people nothing is stopping the extent they will go to harm civilians.

In November2026 when the plaintiff needed colon resection, and her husband refused to be there for the surgery and eight week recovery then proceeded to tell her he was ending their marriage it was their daughter and son who flew in from Japan who is also active duty and the family had not seen in 2 years. This visit was planned around the plaintiffs husbands schedule and the plaintiffs surgery. This was life saving surgery due to rapid polyp growth and sessile carpeting on the right side. Red cross messages were sent, still no family care plan, no updated id, no updated efmp. These delays and the plaintifs husband and the command not intervening cause the plaintiff to have to schedule and reschedule this surgery causing more growth. The doctors stated to her after surgery "there was more than they anticipated." This resulted in the removal of more of her internal organs because the defendant refused to protect the persons they were obligated and had a duty to protect. The defendant may argue it was not their duty or obligation, however they make the rules and regulations demand that civilians follow them then do not abide by their own regulations to protect those same civilians. They swore an owth to defend and protect the constitution and to abide by the regulations and the officers swear to forgo their mental opinions and abide by regulations set before them.

## Enlistment oath:
(a) Enlistment Oath.-Each person enlisting in an armed force shall take the following oath:

"I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."

The plaintiff requested that the Defendant command place an mpo on her husband after the divorce had been filed and she was granted a tpo however financial abuse was not listed on the tpo. She informed legal and Navy IG as well as congress regarding her husbands gross wonton financial abuse spending nearly $10k to repair a vehicle with a fair market value of $1500, hiding accounts, moving at the very least the address of a roth that had been transmuted and comingled to his parents home address that had nearly $100k in it, and using her social security number to file joint tax return in California while she was in Missouri without her authorization or consent, forcing her to file a 14037 with the irs for tax fraud, forgery, and identity theft as well as filing with the state of Missouri. Her husband then altered/likely stopped the allotment his pay was going to the joint checking account knowing she is the only one that has paid/taken care of the finances the majority of their marriage and after reducing the amount by $2k he then transferred nearly $4k to accounts she can't access that he has been hiding. She had continuously informed the command of the goings on and begged them for an mpo which they ignored she even told them that he had purchased 2 tickets to the military ball which is why he refused to be there for her surgery in November to remove part of her colon. He also refused to not be there which meant not seeing their son (he adopted the children and defrauded the state of Arizona to do so)who he had not seen for two years as their son is a Marine stationed in Japan. The command then gas lit her called her abusive and refused to help her even though it is a requirement if there is not a maintenance order in place and there is repeated issues of domestic abuse to include financial abuse.

The plaintiff filed a FAP case even though this has been done repeatedly over the years and they have ignored, dismissed, failed to investigate, or continued to refuse following proper protocol in order to protect the servicemember even though the policy and protocol are in place to protect the families. After she filed an unrestricted report, San Diego moved the case to Virginia the parent command of sbt12. Once in Virginia they relocated it back in San Diego. An unrestricted report requires 3 days to interview the victim obtain their evidence and speak to their witness. The plaintiff told the case manager repeatedly she had evidence and witnesses and asked when she would need those and she told her she would obtain those later. The case manager then contacted the plaintiff weeks later stating that someone had claimed emotional abuse against her however she the case manager would not say who would not say what it was in regards to and refused to follow the proper guidelines which state if the victim files unrestricted the command no longer has immunity and even after the plaintiff read them to her

she still refused to protect the plaintiff and continued to violate her rights and protections as a protected person and victim.

They do this as a means of intimidation to get the victims to drop the claim. The plaintiff contacted Virginia and NCIS since all unrestricted cases are required to go through law enforcement and San Diego never bothered sending to NCIS for investigation. The plaintiff told the case worker she wanted to talk to the supervisor who she discovered is the same person who took and dismissed her other complaints prior and never sent them to IDC or NCIS. The plaintiff discovered the conflict of interest and why they bounced it from San Diego to Virginia then demanded it back to San Diego however continue to violate her basic rights as a victim of financial, medical, emotional abuse, they physical abuse has since long passed.

The plaintiff also submitted a request for Congressional investigation 8 months ago. She contacted Congressmen Graves office several times for an update as the command refuse to assist or even speak with her. The congressman's office informed her they had not been told anything by the Defendant, only that they needed more time to resolve the matter. The plaintiff was informed, after asking, that the Congressman's office who it was submitted to she was informed the Congressman's office submitted inquiry to the Navy Office of Legislative Affairs. Congressman's office informed her they received an email from the Defendant that they did not get involved in civil matters and since the status has changed since the plaintiff and her husband were going through divorce proceedings that was for the court to decide. However once again they violate their own instructions as it clearly states in Navy regulation they are to enforce spousal maintenance if none had been ordered and the parties could not reach an agreement until a court order is issued. Furthermore the defendant was informed by the congressmen's aide regarding her medical and that there was no family care plan, no updated efmp, as well as her military id was expiring in August, this was after they refused to update her military ID for 2 Years after her husband made rank. They did not enforce policy regarding dependent ID even though it is the most basic and bare minimum requirement for active duty servicemembers and their commands to ensure that all servicemembers are providing the dependents. Even after she informed Congress, Legal, Navy IG, and the current presiding Judge in the divorce case and when the Navy legal forwarded to the command that the service member had updated their daughters ID March of 2025 and still refused to update hers and she was being denied appointments, authorizations, and referrals for care in addition to receiving medical bills that had not been paid by Tricare and was informed that her husbands information as the sponsor could not be verified because of this. Additionally the Thompson's are not divorced which was the premise of the original complaint, and they tried to state to congress this would be over on the 27th of July. Her husband will reach his 21st year in the military on the 26th. This was calculated so that

the Defendant can claim they no longer have liability as he goes on terminal leave to start his retirement leave on the 27th. They have tried to "box out" the Plaintiff by any means necessary any and all help, function, assistance and wait out the situation to ensure they could claim no liability.

Additionally when the congressional aide mentioned to the defendant regarding her social security number being used by her husband illegally without her consent to file taxes. This act which constitutes federal tax fraud, identity theft, and forgery has been submitted to the irs and the state of Missouri. Hiding finances moving roth accounts with nearly $100k in it, forcing her to be financially bound leaving her to continue being financially responsible for their joint bills when she can't work has extensive medical issues causing her severe emotional abuse, trauma, medical abandonment, and neglect as a protected vulnerable person under both Military Regulations that required her to participate in EFMP and go through a medical board to participate as well as meeting the state of Missouri standards. They not only refused to mandate spousal maintenance and issue a military protective order when she begged for one after a tpo had already been in place, they aided in the further abuse by her spouse, abandonment, medical abandonment, abuse and neglect when her husband proceeded in stopping the money going into the joint account to pay those bills being denied access to necessary procedures to sustain life, isolation when the only reason she is living in Missouri is because she was under the guise they as a married couple would be retiring there when she has no family friends or help and is completely isolated. They stated to the aide that financial abuse and medical abandonment is not a felonious act. The aide informed the plaintiff that they also stated they were the employer of her husband and she cannot go after an employer for the actions of the spouse.

The Defendants argument may claim lack of jurisdiction and is invalid

Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Requiring the Plaintiff to file and go to either California where the command is or Virginia where the parent command is would be furthering acts of intentional infliction of emotional harm and abuse, as well as furthering intentional negligence and known physical harm to a protected vulnerable party. It would further show their disregard for the Plaintiffs ongoing medical, and emotional state knowing in her present condition would not only exacerbate her health conditions and be to her emotional detriment, it would show further intentional and gross disregard for

the state of Missouri and the regulations governing jurisdictions as it states may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred therefore jurisdictions and regulations cannot be argued by the defendant.

**IIED and Gross Negligence:**
Filing a federal lawsuit under the Federal Tort Claims Act (FTCA) for **Intentional Infliction of Emotional Distress (IIED)** and **Gross Negligence**
Because the plaintiffs administrative SF-95 has been denied and it was clearly and is clearly being articulated under this Federal District Court complaint, the defendant cannot state, try to extend, exhaust the court, further exhaust, abuse and evade the direct actions and intentional negligence and emotional distress that was and continues to be inflicted by them on the plaintiff. Furthermore they cannot state this is for a medical malpractice on a military installation as that is not what took place, the negligence, pain and suffering was caused by their intentional abuse abandonment and disregard for civilian life.

# 1. Intentional Infliction of Emotional Distress (IIED)

The FTCA generally waives the U.S. government's sovereign immunity for torts, but it explicitly excludes most intentional torts (like assault or battery) under what is known as the "intentional tort exception" (28 U.S.C. § 2680(h)), which the Defendant will undoubtedly try to use as their defense.

However, **IIED is an exception to this exclusion**. The Supreme Court has ruled that you can sue the federal government for IIED, provided your claim meets the strict definition under the law of the state where the wrong occurred. To win an IIED claim, you must prove:

- **Extreme and Outrageous Conduct:** The command's actions went completely beyond all bounds of human decency. Proving they actively aided in medical abandonment, ignored Red Cross emergency messages, and knowingly delayed life-saving colon surgery despite a documented history of severe domestic trauma
- **Intent or Recklessness:** The naval command SBT-12 and parent command Group4, FAP, EFMP, navy ig acted with the deliberate intent to cause distress, or acted with a complete, reckless disregard for the high likelihood that emotional and physical devastation would follow.
- **Severe Distress and Causation:** The command's specific refusal to enforce policies directly caused the plaintiffs severe emotional trauma and the subsequent rapid decline of her physical health.

# 2. Gross Negligence

Gross negligence goes beyond ordinary carelessness. It is defined as a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party. Under the FTCA, to establish gross negligence against the Navy, the lawsuit must prove: [1,

- **A Clear Legal Duty:** The Navy had a mandatory duty to enforce the Family Care Plan or the Exceptional Family Member Program (EFMP) regulations under specific Department of Defense (DoD) or Navy instructions that pertain to civilian dependents. They cannot argue that you cannot sue an employer for the way your spouse treated you or for spousal abuse when every single person not only in the military, but as well as, FAP, EFMP, Navy IG are not only mandated reporters and did not protect the civilian dependent as instructed and required by law but the defendant intentionally did not enforce the most basic policy to protect the civilians they lord over. The plaintiffs military id. She was denied her right to updated id and the required benefits not only as efmp mandates, but as any dependent of a servicemember is entitled to and they are required to enforce as this is denial of medical right.
- **A Extreme Breach of Duty:** The command did not just make an administrative error; they demonstrated a shocking lack of care by ignoring the life-and-death reality of the plaintiffs medical situation and not only allowed the abuse to continue they participated in it.
- **Proximate Cause:** The command's failure to enforce these policies is the direct reason surgery was delayed due to delayed authorization, rescheduling surgery due to plaintiffs husband refusing to be there as she needed to have someone to care for her for the 8 weeks of recovery before they would proceed with the surgery once they received the authorization, this delay furthered the rapid growth forcing doctors to remove a larger portion of the plaintiffs colon and lower bowel, and leading to further current medical complications. There is now more rapid growth in less than 6 months and she needs further surgeries and further aggressive measures to prolong her life. The plaintiff has a poor prognosis and high mortality rate.

## Navigating the "Discretionary Function" Defense

The Department of Justice (DOJ) lawyers will use try to dismiss IIED and gross negligence claims with the **Discretionary Function Exception**. The defendant will argue that how a military commander manages a service member, handles family care plans, or responds to spousal disputes involves "military discretion" and judgment, making them immune from lawsuits.

They can only use or utilize this argument WHEN/IF the instructions were NOT mandatory, it states this in the very oath they take.

1. **The policies were mandatory:** The Navy regulations regarding EFMP or Family Care Plans used mandatory language (e.g., "the commander *shall*," not "the commander *may*"). If a policy leaves no room for choice, a commander has no "discretion" to ignore it.
2. **No legitimate policy goal:** Even if the decision was discretionary, leaving a severely ill medical dependent abandoned without a safety net does not serve any legitimate, permissible military or public policy objective. Especially when one of their service members committed financial abuse that not only would have prevented the spores from coming up through the vents making her sick had she been allowed to contact a plumber, it directly caused that same

dependent to end up with 3 infectious diseases which the defendant knew as they received red cross messages and chose to not only allow the plaintiffs husband to not attend to the needs of his wife while hospitalized, they also allowed him to continue to violating policy that efmp dependent spouses requires a family care plan further isolating, neglecting, abandoning, and abusing her at the commands direct assistance of this.

## Key Facts In this Complaint

- **State Law Dictates the Rules:** The FTCA requires federal courts to apply the tort law of the state where the injury occurred. If the primary command omissions happened while the service member was stationed in California, however Missouri was where the plaintiff was injured tort law borrowed from Missouri stated ftca should dictate the definitions and requirements for the IIED and gross negligence claims.
- **Quantifying the Pain and Suffering:** Because of the physical injuries (the loss of additional colon/bowel and ongoing rapid polyp growth which means additional aggressive treatment and further removal of internal organs to prolong life are required) are inextricably tied to the emotional distress of abandonment, plaintiffs physical symptoms as well as depression knowing her shortened life. The is the worst kind of intentional, powerful, and objective evidence that substantiate the "severity" required by an IIED claim.

The Defendants have previously stated Private Person Standard, which the FTCA states that the government is only liable if a private person would be liable under the same circumstances. The Defendant will argue "A private employer cannot be sued if an employee treats their spouse poorly.

However, under Coercive Employment Requirements: An employer mandating control over an employee's personal marital affairs—such as requiring designated caregivers or attempting to intervene in financial and medical decisions—such as the family care plan, requirement for efmp, military id, etc., creates a highly problematic boundary between professional duties and personal rights. Employees facing coercion or overreach from an employer may have legal recourse under state labor laws and privacy protections.

This plaintiff is more than happy to file a class action lawsuit for these items for all dependents worldwide should the defendant want to continue, persist and insist that the plaintiff can't sue them claiming Private Person Standard, and wants to be treated as an employer. Should that be the case the defendant cannot claim sovereign immunity under the federal government as they cannot have it both ways just so they can continue their abusive practices. However if they are "just an employer" they would be required to be held under Prohibition of coercive control employment. Coercive employment requirements are conditions or rules imposed by an employer that force workers to surrender legal rights, accept unfair financial penalties, or endure hostile environments to

keep their jobs.  In that regard the defendant had no business delineating instructions pertaining to any dependent ever and that would further mean they have clearly and intentionally violated this. However this only further proves they intentionally inflicted emotional harm and negligence.

Additionally the SOCOM IG told the Plaintiff they could not assist since there was a Congressional inquiry, and the defendant informed Congress they "can't do anything because of the divorce," "she can't sue the military because her husband treated her badly, you can't go after an employer because your husband mistreated you", then Congress stated there was nothing further they could do for her even after reading the military instructions the defense not following.
The plaintif is pleading with the court for this intervention as and under:

**Federal judges have the power to penalize bad-faith actions by federal agencies**

- **Claim Under:  Administrative Procedure Act (APA)/Bivens Action / Due Process Claim**.
- **The Argument:** The plaintiff is *not* suing because the husband treated her badly. The suit is against the Department of Defense (DoD) for **intentional, systemic deprivation of benefits.** By actively withholding a legally mandated identification card refusing to issue the updated card for over two years—especially during an active investigation—the government committed an overt act that directly barred her from accessing her benefits and life-saving medical care in a timely and sufficient manner.
- **The Goal:** A federal judge can issue an **injunction** requiring the military to toll (freeze)legally preventing them from cutting off her TRICARE eligibility and base privileges allowing for the time it would take to make her medical needs to be met and made whole. Given that this has caused a situation where she will and cannot ever be made whole as she has lost and will continue to lose health, internal organs, suffers daily, bleeds on a constant basis and her life has been shortened, the only rectification for the lost time and to now be made whole is indefinite or if she somehow recovers and will not suffer additionally for the loss of some, part or all of any of her internal organs.

- **The Legal Fact:** They are **not** divorced yet. She is still legally a dependent and entitled to care today and until otherwise notated. The fact that the defense refused to assist her with her ID over 2 years ago prior to her and her husband even agreeing on a date that they were separated which was not until November 2026 shows their part in the depravity of her benefits, aiding in the abuse from her husband, the gross neglect and abandonment of care.
- **Emergency Medical Intervention:** The plaintiff request that she is issued her own military ID and she is her own sponsor which is what they do when a servicemember is discharged after court martialed for abuse or if they meet the requirements after divorce. She is requesting this so that she does not have to

continue with the abuse of the command and her husband as they have clearly shown they have no intention of stopping the abuse or helping her in any way. In her most recent medical visit she has large rapid colon polyp growth that has taken place in less than 6 months. She has to have additional colonoscopy which will then determine the extent of the colon that needs removal. The colonoscopy is set to take place between September-October as there are other patients ahead of her and then she will be referred back to colorectal surgery.  During this time she will have additional doctor visits with other specialist to include, urology, hemotology/oncology, neurology, pain management, as well as scans she will have to have done in the interim. Not being able to do this will be detrimental not only her health but her life.

- 

## Immediate EFMP and TRICARE Medical Navigation

Because she is registered in the **Exceptional Family Member Program (EFMP),** her medical needs are already heavily documented in the military tracking system.
This means that the defendant not only had documentation of this, she was informed when they looked it up, as well as when her husband called Tricare to change his own location in California and still refused to update her ID.

**Plead to the Court**

After years of degradation, humiliation, and abuse from the Plaintiffs husband, the command, and the systemic network that the Defendant has put in place to ensure persons like herself are left abandoned, isolated, emotionally brutalized and unable to actually get help as they shuffle her and dependents like her from one entity to another until they give up, enduring further abuse, succumb the health issues, divorce or many to suicidal ideation they are suffering and psychological health and help escapes them because their sponsor/spouse is required to be part of that process.

She pleads with the court to grant her justice and to end their tyranny over her and let her live out the hopes of maybe a decade doing all she can to extend her life so she can enjoy the time she has left with her children.

The Plaintiff is requesting damages in the amount of $3,770,000, the same amount that was requested in the SF95.

The plaintiff suffers from daily diarrhea, bleeds rectally every couple weeks for no less than 7 days, she is anemic, she has low co2, she has a hiatal hernia that has been repaired twice and needs a third repair however due to her current intestinal issues she cannot have it repaired until they know the full extent of the damage and removal needed. Because of this and the hole in her diaphragm from the hernia her intestines push through the diaphragm and up into her chest pushing onto her heart and lungs causing shortness of breath when she walks or even stands at times. It cause her heartbeat to increase and she has fluid on the lower part of her lungs. Her hair has begun falling out and she has scalp psoriasis that causes her head to bleed. She has 3 major hemophiliac bleeding disorders von wildebrands disease, factor 5 and 8, which only worsens the complexities of her rapidly declining health. She has rcvs which are small blood clots that rupture in her brain, nafld enlarged liver of 22cm 3times the size of a mans liver. Has migraines, syncope moments, kidney stones that require surgical removal, colon polyp rapid growth, torn rotator cuff, bladder damage, ½ thyroid that has nodules and may need removal the right side has already been removed, these are the major issues she's experiencing not to include exhaustion, fatigue depression gerd, 3 of her molars were recently removed due to the constant vomiting she experiences from the intestinal disruption it broke the back molars. She is in constant pain every day that is comparable to Braxton hicks contractions and she has no uterus.

Had the defendant adhered to policy there is a high probability that the plaintiff and her husband would not be getting divorced because the abusive behavior cheating and declination of his brain issues and their marriage may never have transpired. She is also requesting that the defendant pay the taxes on the amount requested. Should the amount requested come into question the plaintiff is more than happy to itemize everything she has had to do and endure alone which would far exceed the amount requested. However she requested a reasonable amount for less than the value of her life, the pain and suffering she has and will continue to endure and in the unlikelyhood she will live longer than the next 5 years. It equates to around $500k per year for 5 years. She will eventually need a full time caregiver which will cost around $300k per year, this does not include medications, hospital visits, stays, or surgical procedures/surgeries.

N01752-1

All beneficiaries entitled to care at Navy medical and dental facilities whose abuse or neglect is brought to the attention of appropriate authorities. All beneficiaries reported for abusing or neglecting such victims. Victims/offenders not associated with the Department of the Navy and who are not generally entitled to care at Navy medical and dental facilities.

Navy Family Advocacy Case Files

(a) Victim's file consists of risk assessment which includes the following forms incident report, eligibility decision, demographics, safety assessment, safety response, risk focused assessment reports (DOMAINS I, II, IV, V, VI, VII), risk assessment matrix, risk assessment summary, risk assessment findings, intervention plan, and Case Review Committee presentation; video/audio tapes of contact with victim; case notes about victim; Family Advocacy Program generated correspondence regarding abuse or neglect of victim; Original copy of DD Form 2486; Privacy Act Statement signed by victim; contacts with children who are not victims of abuse or neglect, and other supporting data assembled relevant to the abuse or neglect and generated by FAP staff that are specific to the victim.

(b) Offender's file consists of assessment with offender; demographics; video-audio tapes of contacts with offender; case notes on contacts with offender; case notes about offender; risk focused assessment report DOMAIN III (alleged offender characteristics); Family Advocacy Program (FAP) generated correspondence regarding offender; Privacy Act Statement signed by offender; and other supporting data assembled relevant to the abuse or neglect and generated by the FAP staff that are specific to the offender.

(c) Documentation generated outside of the Family Advocacy Program (Naval Criminal Investigative Service reports; local police reports; Base Security Incident Complaint Reports; psychiatric and substance abuse evaluations; treatment reports; copies of pertinent medical entries; Child Protective Service reports; shelter reports; photographs; correspondence generated outside the Family Advocacy Program; and other supporting data assembled relevant to the abuse or neglect and generated outside the FAP that are specific to either the victim(s) or offender(s) (e.g., Military Protective Orders, barring letters, and civilian temporary restraining orders) are maintained in a separate folder and are retrieved by case number.

NAVADMIN 159/22

c.   Provides additional guidance for commanding officers on military protective orders and civilian protective orders (see paragraph 4)

2.   FAP Program Updates and Victim Services.   Commander, Naval Installations Command must ensure:
     a.   FAP victim advocates (VA):
          (1) Possess or obtain within six months of hiring, at a minimum, the

Basic Advocate Credential with a designation of Comprehensive Intervention Specialist, approved by the National Advocate Credentialing Program.

    (2) Be trained to use the Victim Advocate Lethality Assessment Checklist. The Victim Advocates (VA) Lethality Assessment Checklist is a CNIC form that must be used in initial interviews with victims by FAP VAs to identify and reduce risk of death or serious physical harm.

    b. Installation FAP personnel coordinate with installation medical treatment facilities (MTF) to ensure medical representative participation at the installation Incident Determination Committee (IDC). Reference (a) directs the Department of Health Affairs to designate a health care provider and alternate from, or via, the forensic healthcare program at the installation MTF or another MTF supporting the installation to serve as a core member on the installation IDC. The health care provider and alternate designated as core members are required to have the requisite medical training, expertise, and available consultation resources to offer a medical opinion on domestic abuse, child abuse, and neglect-related injuries.

    c. Each victim of domestic violence receives a comprehensive informational guide, written in a clear and easily understandable format, on the FAP and available services to include the following:

    (1) Military law enforcement services, including an explanation of the process that follows a report of an incident of domestic abuse, child abuse or neglect.

    (2) Notification for victims who have elected to file an unrestricted report of domestic abuse involving Special Victim Investigation and Prosecution covered offenses of their right to consult with a legal assistance attorney for legal support and their right to request Special Victims Counsel or Victim Legal Counsel (VLC) services, if eligible.

4. Military Protective Orders (MPO) and Civilian Protective Orders (CPO) are necessary to protect victims. Per references (b) and (e), Service Members must comply with civilian protective orders and military protective orders or face possible disciplinary actions for CPO/MPO violations. COs must provide notice to any Service Member under a MPO or CPO that the Service Members failure to comply may result in administrative or other disciplinary action, to include potential prosecution in line with the Uniform Code of Military Justice. Commanders should consult with the first Staff Judge Advocate in their chain of command to determine how to best address CPO/MPO violations.

## SECNAVINST 1754.5C

5. Policy a. Enrollment in the EFMP is mandatory for all active duty Service members and active reservists with an EFM, both children and adults. Identification and enrollment in the EFMP ensures all required medical and educational services for dependents are considered during the Service member's assignment process.

## OPNAVINST 1754.2F

c. Enrollment. Enrollment in the EFMP is mandatory for all active duty Service members and reservists with family members who are identified with medical (physical, developmental, or mental health) or special educational requirements of a chronic nature (6 months or longer), as directed by reference (c). Enrollment helps ensure all required services are considered during the Service member's assignment process. Only family members enrolled in the Defense Enrollment Eligibility Reporting System (DEERS) and eligible to transfer with the Service member will be enrolled in the EFMP.

6. Responsibilities a. Office of the Chief of Naval Operations (OPNAV), 21st Century Sailor Office (N17) (1) Establish program policy and oversight for implementation of comprehensive and coordinated medical, educational, family, and community support to military families with special needs. (2) Evaluate and monitor the EFMP in coordination with NAVPERSCOM (PERS-456). b. NAVPERSCOM (PERS-456) (as the Navy's designated EFMP manager) (1) Establish and maintain cooperative relationships with: Office of the Secretary of Defense (OSD), Office of Family Readiness Policy, Office of Special Needs; DoDEA; Assistant Secretary of the Navy, Military and Reserve Affairs; Bureau of Medicine and Surgery (BUMED); Commander, Navy Installations Command (CNIC) family support programs; and other Military Services, to ensure delivery of integrated program services, identify resource requirements, and monitor program compliance with public laws mandating EIS, special education services, and family support for family members with special needs. (2) Chair a Navy EFMP working group with representatives from OPNAV 21st Century Sailor Office, Family Readiness Section (N170C); BUMED, Office of Deputy Chief, Medical Operations (M3); NAVPERSCOM (PERS-4); CNIC, Fleet and Family Readiness (N9); and DoDEA to periodically examine policies and procedures of the EFMP. (3) Monitor and evaluate program effectiveness and compliance with DON policy through periodic assessments. (4) Utilize data collected in the EFMP module in NFAAS to develop reports required by reference (f) and inquiries from higher authority. (5) Develop and conduct EFMP training and information campaigns for command personnel at all levels. (6) Assign final category and flag the Service member's official EFMP record at NAVPERS (PERS-4).

f. Installation Commanders. Ensure command support personnel, such as chaplains, child and youth program staff, FFSC staff, and ombudsmen, are aware of EFMP goals and eligibility requirements. g.

Unit COs (1) Ensure Service members assigned to their unit are in compliance with the requirements of this instruction.

i. Service Members (1) Upon identification of a family member's qualifying condition(s) listed in reference (b), immediately begin the enrollment process by completing all required enrollment forms and submitting completed forms to the MTF EFMP coordinator for review by the central screening committee. Note: In areas with no military MTF or MTF EFMP coordinator, forward the EFMP application forms (with required documentation attached) to the appropriate medical cognizance, in line with reference (c).

(2) Ensure MTF EFMP coordinator has current medical information for inclusion in the family member's health record(s), whether obtained from military or civilian healthcare providers, medical facilities, hospitals, or early intervention or special education personnel.

(3) Ensure updated enrollment every 3 years or when there is a change in special medical or educational needs. Family members enrolled in category 6 must be updated within 12 months.

**OPNAVINST 1740.4E**

Purpose a. To establish policy, assign responsibilities, and prescribe procedures for the care of dependent family members of Service members, including Reserve Component (RC) and members of the Department of Defense (DoD) civilian expeditionary workforce.

6. Requirements a. The Service member has the responsibility to ensure dependent family members are cared for during deployments, reserve mobilizations, and TDY, as well as at all other times during which the Service member is unavailable. The primary responsibility for initiating and developing a workable family care plan rests with the individual Service member. It is also the responsibility of the Service member to provide the designated caregiver with all information and documentation needed to execute the family care plan and provide for the Service member's minor children or adult family members' dependents. Formal documentation of a family care plan is required for the individuals and situations listed in subparagraphs 6a(1) through 6a(5). (1) Single parents. (2) Dual-military couples with dependents, where one or both Service members have primary or shared physical custody of a minor child or children. (3) Service members in a blended family. Service members who have custody of a child or children from a prior relationship need to complete a family care plan, even if they have remarried and plan to have the new spouse care for the minor child during periods of absence. (4) Service members who are legally responsible for an adult family member who is incapable of providing for themselves in the absence of the Service member. (5) Family circumstances or other personal status changes that result in a Service member becoming legally and primarily responsible for the care of another person and necessitate implementation of a family care plan. Such circumstances include, but are not limited to, those in subparagraphs 6a(5)(a) through 6a(5)(f). (a) Birth, adoption, or guardianship of a minor child or children. (b) Loss of a

spouse through death, separation or divorce, or spouse's injury or illness is of such a nature that the spouse is unable to care for minor children or adult dependents.

b. The family care plan should identify the caregiver(s), as defined in enclosure (1), who agree to provide for the Service member's minor children or adult dependents. NAVPERS 1740/6 Department of the Navy Family Care Plan Certificate and NAVPERS 1740/7 Family Care Plan Arrangements must be used to document the family care plan. The Service member must submit these forms through the chain of command as part of the family care plan package. Specific requirements are included in subparagraphs 6b(1) through 6b(3).

(4) The financial well-being of family members covered by the family care plan during separations. Arrangements should include power(s) of attorney, allotments, the review of any child support orders, or other appropriate means to ensure the self-sufficiency and financial security of dependent family members. Service members should provide support for dependent family members as directed by reference (b), article 1754-030. (5) Medical and legal support necessary to ensure continuity of care for dependent family members. (6) Relocation, if necessary, of the caregiver or family to a new location. Consideration of a non-military escort for dependents who require assistance, such as infants, children, or elderly disabled adults, should be outlined when family considerations dictate

d. COs (1) Ensure that all members of their command are informed of the requirements of this instruction. (2) Ensure that all members of their command who are required to complete a family care plan do so as directed by this instruction. (3) Establish a collateral duty billet for a family care plan coordinator. (4) Ensure the Service member's family care plan is maintained at the command, as directed by reference (g). (5) Ensure that all family care plans are reviewed for adequacy and discussed with the Service member, upon submission and annually, using the checklist in enclosure (2). (6) Ensure that administrative separation processing is initiated for Service members who are unable to, or refuse to, maintain a current family care plan, do not maintain worldwide assignable status, or are unable to perform their professional and military duties. Grounds for separation and procedures for administrative separation processing will be as directed by the current administrative separation directives (references (b), article 1910-124, and (h)). Refer OPNAVINST 1740.4E 5 Oct 2017 8 administrative separation packages NAVPERSCOM, Head, Enlisted Performance and Separations Branch (PERS-832) for active enlisted, NAVPERSCOM, Head, Officer Performance and Separations Branch (PERS-834) for

active and Reserve officers, or NAVPERSCOM, Head, Reserve Enlisted Status Branch (PERS-913) for Reserve enlisted

**MILPERSMAN 1754-030**

Policy. The Navy will not act as a haven for personnel who disregard or evade obligations to their legal family members. All Service members must provide adequate and continuous support for their lawful family members and comply fully with the provisions of separation agreements and valid court orders. Any failure to do so which brings discredit upon the Navy may be cause for administrative or disciplinary action, which may include the initiation of court-martial proceedings and may ultimately lead to separation from the Navy. 2. Sufficient Support. Every person has an inherent natural and moral, as well as a legal obligation, to support his or her legal family members. In many states, the failure to support one's legal family member is a criminal offense. What is adequate or reasonably sufficient support is a highly complex and individual matter dependent on numerous factors and may be resolved only in a civil court of competent jurisdiction. Some of the salient factors that may be taken into account are the pay, private income, and resources of the person and the family members; the cost of necessities and everyday living expenses; financial obligations of the family members; and the expenses and financial obligations of the person in relation to his or her income.\

11. Commander's Responsibilities – Non-Support Complaints Involving Enlisted Personnel a. The responsibility of every commander is to make sure all enlisted personnel under his or her command are informed of Navy policy and expectations regarding support of family members and the possible consequences of separation for misconduct for failure to discharge their just obligations. Married personnel at sea or stationed overseas must be counseled and encouraged to make provisions for continuous allotments to their dependents in amounts sufficient to enable their spouses to meet the family obligations at home. b. Upon receipt of a complaint alleging that an enlisted member is not adequately supporting his or her lawful spouse and or children, the Service member must be interviewed and informed of the DON policy concerning support of family members. Counseling may be documented via NAVPERS 1070/613, or any other form of written counseling that specifically addresses the complaint of non-support. In the absence of a determination by a civil court or a mutual agreement of the parties, the support guide in subparagraph 4a above is applicable. Service members must be advised of their legal and moral obligations as well as their rights in the matter. Service members must be informed that their naval careers may be in jeopardy if they do not take satisfactory action. Service members may become ineligible to reenlist or extend their enlistment. If a member is

not adequately supporting their dependent(s), they may be subject to administrative or disciplinary action that may result in their separation from the Navy. c. Justifiable complaints of non-support or insufficient support against an enlisted member, with no indication of satisfactory progress toward establishing an acceptable solution, will be considered as evidence of misconduct. In such cases, action may be taken as specified in the appropriate Military Personnel Manual (MILPERSMAN).


**SECNAV 1752.2C**

Commanders must: a. Issue and post a FAP policy statement that includes the responsibilities of all personnel to prevent unacceptable conduct, provide a safe, respectful, and healthy environment intolerant of domestic and child abuse and related behaviors, and prohibit reprisals against individuals who submit reports of such behavior. b. Ensure all Service members involved in open FAP cases or closed unresolved high risk cases are properly screened prior to authorizing transfer to another command. Service members involved in CSA cases must not be transferred until the case is resolved. c. Ensure victim safety and support is implemented through the FAP as specified in subparagraphs 3c(1) through 3c(6). (1) Ensure immediate and continuous victim response capability is available in all locations. Victims must be given timely access to appropriate services, including medical care, victim advocacy, counseling, law enforcement, victim witness assistance program information, and chaplain services. OPNAVINST 1752.2C 20 May 2020 3-5 (2) Report all allegations of domestic or child abuse immediately to FAP to prompt a thorough risk assessment and safety planning. (3) Ensure victims of domestic or child abuse receive sensitive care and support and are not subjected to secondary victimization as a result of reporting the incident. (4) Inform victims of domestic abuse of the limits of confidentiality and reporting options. (5) Ensure all Service members, family members, and civilian personnel are made aware of military and civilian resources available to assist victims of domestic and child abuse. (6) Ensure all Service members and family members are aware of the policies, provisions, and agreements delineated in the transitional compensation for abused dependents policy.